## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LuAllen Kettner, as Trustee for the Next-of-Kin of Lawrence Kettner, decedent,

        Plaintiff,

    v.

Compass Group USA, Inc.,

        Defendant.

Civil No. 08-205 (JNE / SRN)

### REPORT & RECOMMENDATION

---

Sonia Miller-Van Oort, Flynn, Gaskins & Bennett, L.L.P., Suite 2900, 333 South Seventh Street, Minneapolis, MN 55402, for Plaintiff.

Sandra L. Jezierski, Halleland Lewis Nilan & Johnson P.A., 600 U.S. Bank Plaza South, 220 South Sixth Street, Minneapolis, MN, 55402, for Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Defendant's Motion To Dismiss (Doc. No. 5). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, the Court recommends that the motion be granted in part and denied in part.

## I.     FACTUAL AND PROCEDURAL HISTORY

Decedent Lawrence Kettner, who had been employed by Defendant Compass Group USA, Inc., suffered from Usher's Syndrome, resulting in his blindness. In late 2003 and early 2004, he missed work due to double-pneumonia. In 2004, he was diagnosed with pancreatic cancer. In early 2004, his hours were reduced from full-time to part-time, resulting in the loss of his health insurance and other benefits. At the time of his discharge in 2005, he was 71 years old. He died in June 2006 from pancreatic cancer at the age of 72.

Plaintiff LuAllen Kettner, as trustee for the next-of-kin of his deceased brother, filed this action based on Compass's discharge of decedent, asserting claims under three federal statutes–the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101-12300 (the "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797b (the "Rehabilitation Act"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 (the "ADEA")–as well as under state law–the Minnesota Human Rights Act ("MHRA").  (Doc. No. 1.)   Plaintiff alleged that due to Defendant's actions, decedent "experienced significant pecuniary losses (including lost pay and benefits), mental anguish and emotional distress as manifested by a variety of objective physical and emotional symptoms, and the loss of life's enjoyment."  (Id., ¶ 35.)

With respect to his claims under each of the three federal statutes, Plaintiff alleged that decedent "suffered loss of income, loss of employment benefits and other compensation, and other damages."  (Id. at 6, 7, 8.)  Plaintiff alleged the same losses with respect to his claims under the MHRA.  (Id. at 9 (also specifying that they were in excess of $50,000).)  He sought "all damages" to which decedent would be entitled, "including, but not limited to, all special, general, compensatory, exemplary, or other damages" pursuant to these federal and state statutes, as well as attorney's fees and costs and pre-judgment and post-judgment interest.  (Id. at 10.) Plaintiff did not expressly seek "punitive" damages by name, but did request "exemplary" damages.

Defendant now moves to dismiss certain aspects of the Complaint, contending that each of Plaintiff's claims survived decedent's death only to the extent Plaintiff seeks special damages. (Doc. No. 5.)

## II.    DISCUSSION

Defendant seeks "an order dismissing the Plaintiff's claims for damages other than back

pay, lost health benefits, attorney's fees, pre-judgment interest and post-judgment interest."

(Doc. No. 5.)[1]

### A.     State Law Claims

Plaintiff alleges disability discrimination and age discrimination under the Minnesota

Human Rights Act and seeks various types damages on behalf of decedent.  (Doc. No. 1 at 8-9.)

"A cause of action arising out of an injury to the person dies with the person of the party

in whose favor it exists, except as provided by section 573.02."  Minn. Stat. § 573.01.

> When injury is caused to a person by the wrongful act or omission of any person
> or corporation and the person thereafter dies from a cause unrelated to those
> injuries, the trustee appointed in subdivision 3 may maintain an action for special
> damages arising out of such injury if the decedent might have maintained an
> action therefore had the decedent lived.

Minn. Stat. § 573.02, subd. 2.  In short, a trustee may seek only special damages for personal

injuries to a decedent who died from causes unrelated to those injuries.  "'Special damages' are

those damages to which an exact dollar amount can be assigned, such as medical expenses or lost

wages to date of death."  Deal v. Northwood Children's Home Society, 608 N.W.2d 922, 925 n.1

(Minn. App. 2000).

---

[1] Under Rule 12, a party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Although such a motion is usually directed at a particular claim in its entirety, the Rule would seem to extend to the present request for relief–that is, a request to dismiss not the entirety of, for example, Plaintiff's claim for violation of the Age Discrimination in Employment Act, but rather Plaintiff's request for particular types of damages under each of the various claims.  See, e.g., Estwick v. U.S. Air Shuttle, 950 F. Supp. 493, 497 (E.D.N.Y. 1996) (noting that while motion was styled as one for summary judgment, challenges regarding issues such as survival of claims "are addressed to the legal sufficiency of the complaint under" Rule 12(b)(6)).  Rule 12 speaks in terms of a claim "upon which relief can be granted" and a motion to dismiss certain aspects of particular claims according to the types of damages sought under each claim appears to fit within Rule 12's reference to the availability of "relief."  Moreover, insofar as the recovery of certain types of damages would not be available here as a matter of law, the present motion would appear to be not dissimilar from a Rule 12 motion seeking dismissal of an entire claim as a matter of law.

In <u>Lipka v. Minnesota School Employees Ass'n Local 1980</u>, the Minnesota Court of Appeals determined "that Human Rights Act claims constitute 'injury to the person'" for purposes of the survival statute and thus, absent claims for special damages, any remaining claims abated on the death of the injured party.  537 N.W.2d 624, 630 (Minn. App. 1995), <u>aff'd</u>, 550 N.W.2d 618 (Minn. 1996).

Here, Defendant contends that the only special damages Plaintiff seeks "are back pay, lost health benefits, attorneys fees, pre-judgment interest and post-judgment interest" and thus seeks dismissal with respect to any and all other damages.  (Doc. No. 16, at 2.)  But while only "special damages" survive, the Court cannot require Plaintiff, at this stage, to establish with greater specificity what precise types or amounts are claimed as special damages.  Such specificity is needed only at the time of trial.  The Complaint adequately alleged that decedent "experienced significant pecuniary losses (including lost pay and benefits), mental anguish and emotional distress as manifested by a variety of objective physical and emotional symptoms, and the loss of life's enjoyment."  (<u>Id.</u>, ¶ 35.)  This is sufficient to put Defendant on notice of the types of damages Plaintiff is seeking.

Moreover, Defendant premises its motion on Federal Rule 9(g), which provides that "[i]f an item of special damage is claimed, it must be specifically stated."  Fed. R. Civ. P. 9(g).  But "special damage" under the federal rule refers to those damages that are "the natural but not the necessary consequence" of the act or omission that renders the defendant liable.  <u>Burlington Transp. Co. v. Josephson</u>, 153 F.2d 372, 377 (8th Cir. 1946).

> General damages typically are those elements of injury that are the proximate and foreseeable consequences of the defendant's conduct.  Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct, and typically stem from and depend upon the particular circumstances of the case.

5A Wright & Miller, Federal Practice and Procedure § 1310, at 346-47 (3d ed. 2004).[2]

This procedural restriction on seeking "special damages" is not what Minnesota law refers to when it provides that only "special damages" survive the death of a plaintiff.  But this incongruity is of no consequence here.  Under Minnesota substantive law, which applies here with respect to Plaintiff's claims under the MHRA, it remains clear that Plaintiff may obtain only "special damages" as understood under Minnesota's law of survival.  Insofar as federal Rule 9(g) governs the pleading requirements in actions filed in federal court, it would not appear to preclude any damages here insofar as all of the damages Plaintiff presently seeks would apparently be the usual consequence of violations of the various statutes at issue.  Lost wages and benefits, for example, are plainly the usual consequence of being terminated due to employment discrimination.  Cf. Saturn Mfg., Inc. v. Williams Patent Crusher & Pulverizer, 713 F.2d 1347, 1357 (8th Cir. 1983) (noting that in an infringement action, patentee's lost profits are not special damages for purposes of Rule 9(g)).  If, at trial, Plaintiff seeks damages that would not usually flow from a termination in violation of the applicable employment discrimination statutes, the trial court may properly exclude them at that time if they were not "specifically stated."

**B.     Federal Law Claims**

With respect to the federal claims, it appears that the precise issues are questions of first impression in this district.  Moreover, decisions from other federal jurisdictions are decidedly mixed.

---

[2]  Likewise, the Minnesota counterpart to federal Rule 9(g), providing that "[w]hen items of special damage are claimed, they shall be specifically stated," Minn. R. Civ. P. 9.07, is construed to refer to "the natural, but not necessary, result of a wrongful act," 1 Herr & Haydock, Minnesota Practice § 9.10 (4th ed. 2002).

The question of whether a cause of action based on federal law survives the plaintiff's death "is a question of federal law." Carlson v. Green, 446 U.S. 14, 23 (1980).  The survival of claims under federal law depends in the first instance on whether there is an applicable federal survival statute.  "There is no general survival statute for federal question cases."  2 Cook & Sobieski, Civil Rights Actions ¶ 4.05, at 4-80.  Accord 7C Wright, Miller & Kane, Federal Practice and Procedure § 1954 (3d ed. 2007).

Although some federal statutes that create a cause of action also provide for survival, [i]n the absence of a provision of this kind the court must look to federal common law."  7C Wright et al., supra, § 1954 at 670.  With respect to civil rights actions, "the question whether a civil rights action survives the death of the plaintiff or defendant seldom is resolved explicitly by Congress," as "virtually none of the civil rights acts makes any express provision for survival." 2 Cook & Sobieski, Civil Rights Actions ¶ 4.05, at 4-80.[3]  Nor do the particular employment discrimination statutes at issue here include any provision regarding survival.

1.   **Section 1988(a) Does Not Apply To The ADEA, ADA Or Rehabilitation Act**

Defendant contends that the survival of all of the federal claims at issue here is governed by Section 1988 of Title 42.  Section 1988 specifies the governing law with respect to particular federal civil rights claims.  Section 1988(a) provides, although perhaps somewhat opaquely, that federal courts generally shall apply state common law, as modified by state statutes, to fill whatever gaps exist in certain federal statutes:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of

---

[3]  "Section 1986 of Title 42 is a rare exception, but even the survival provision of that statute addresses only the issue whether an action survives the death of the plaintiff."  Id. Section 1986 is not at issue here.

all persons in the United States in their civil rights, and for their vindication, shall
be exercised and enforced in conformity with the laws of the United States, so far
as such laws are suitable to carry the same into effect; but in all cases where they
are not adapted to the object, or are deficient in the provisions necessary to
furnish suitable remedies and punish offenses against law, the common law, as
modified and changed by the constitution and statutes of the State where the court
having jurisdiction of such civil or criminal cause is held, so far as the same is not
inconsistent with the Constitution and laws of the United States, shall be extended
to and govern the said courts in the trial and disposition of the case, and if it is of
a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. § 1988(a) (2000).  Section 1988(a)

recognizes that in certain areas "federal law is unsuited or insufficient 'to furnish
suitable remedies'"; federal law simply does not "cover every issue that may arise
in the context of a federal civil rights action." . . . When federal law is thus
"deficient," § 1988 instructs us to turn to "the common law, as modified and
changed by the constitution and statutes of the [forum] State," as long as these are
"not inconsistent with the Constitution and laws of the United States."

Robertson v. Wegmann, 436 U.S. 584, 588 (1978) (quoting Moor v. County of Alameda, 411

U.S. 693, 703 (1973)).  In other words, in those civil rights actions brought under titles 13, 24,

and 70 of the Revised Statutes, if federal law is lacking or deficient to fully effectuate the "trial

and disposition" of the cause of action, a federal court shall apply the law of the state in which

the court hears such a claim, as long as such state law "is not inconsistent with" federal law.

Section 1988(b) presently provides for the recovery of attorney fees in certain specified

actions:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982,
1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious
Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized
Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 13981 of
this title, the court, in its discretion may allow the prevailing party . . . a
reasonable attorney's fee . . . .

42 U.S.C. § 1988(b) (2000).  Section 1988(c) similarly provides for an award of expert fees as

part of such an attorney's fee award in Section 1981 and Section 1981a actions.  42 U.S.C. §

1988(c) (2000).  Thus, the applicability of each of the three subsections varies according to their

express terms.

With respect to the applicability of Section 1988(a), the statute itself confines its application to actions under "titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights."  42 U.S.C. § 1988(a) (2000).[4]  Title 13 of the Revised Statutes consisted of "R.S. §§ 530 to 1093."  Id., References in Text.[5]  Likewise, Title 24 consisted of "R.S. §§ 1977 to 1991, which are classified to sections 1981 to 1983, 1985 to 1987, and 1989 to 1994" of what is now Title 42 of the U.S. Code.  Id.  And Title 70 of the Revised Statutes consisted of "R.S. §§ 5323 to 5550," the federal criminal code at the time, which is now codified as Title 18.  Id.  "Thus, [these] annotations clearly explain which federal civil rights acts are covered" by Section 1988(a).  Brian Owsley, "Survivorship Claims Under Employment Discrimination Statutes," 69 Miss. L.J. 423, 428 (1999).

None of the above-referenced sections of the Revised Statutes corresponds to statutes codifying the ADEA, the ADA, or the Rehabilitation Act.  See U.S.C.A., Tables, Vol. I, Table 1 (correlating provisions of the Revised Statutes of 1878 to sections of the current U.S. Code).  Unlike section 1983 claims, claims under the ADEA as well as under Title VII "do not contain a provision similar to 42 U.S.C. § 1988."  Khan v. Grotnes Metalforming Systems, Inc., 679 F. Supp. 751, 756 (N.D. Ill. 1988).  "The list of cases to which Section 1988(a), by its very language, applies does not include ADA or Title VII cases."  Hanson v. Atlantic Research

---

[4]  Federal statutes were previously codified as the Revised Statutes of the United States of 1878 (a revision and correction of the first codification of federal statutes, the Revised Statutes of 1873).  Cohen & Berring, How to Find the Law 189 (8th ed. 1983).  The United States Code was first adopted in 1926, replacing the Revised Statutes.  Id. at 191.

[5]  What is now codified at 42 U.S.C. § 1988(a) was itself formerly codified at Rev. Stat. § 722, that is, as part of the sequence of other statutes of Title 13 of the Revised Statutes to which the provision applies.

Corporation, 2003 WL 430484, *3 (E.D. Ark. Feb. 14, 2003).  As a leading commentator concludes, "§ 1988(a) applies only to the Reconstruction civil rights acts," not to the employment discrimination acts of the 1960s and beyond.  Owsley, supra, at 424 (providing thorough analysis of statutory evolution and legislative history).

Likewise, a prior version of Section 1988(a), and that at issue in Robertson and Moor, referred not to provisions of the Revised Statutes, but rather confined its application to actions under "this chapter and Title 18."  Robertson, 436 U.S. at 585 n.1; see 42 U.S.C. § 1988 (1970).  "[T]his chapter" of Title 42, that is Chapter 21, entitled "Civil Rights," included the well-known civil rights provisions of Sections 1981 through 1996.  Title 18 is, of course, the present federal criminal code.[6]  Thus the stated application of Section 1988(a), despite this variation in its phrasing, has always been confined to certain core civil rights provisions–essentially the Reconstruction Era Civil Rights Acts–and has never extended to actions under the ADA, ADEA or Rehabilitation Act–which while plausibly labeled "civil rights" legislation in the broad general sense, are more precisely labeled employment discrimination legislation.[7]

---

[6]  Chapter 21 consisted of not only Subchapter I, but also Subchapters II through IX, which codify the bulk of the Civil Rights Act of 1964.  Extending Section 1988(a) to the latter was apparently unintended.  Thus, by 1976 and through 1982, the statute stated that it governed actions under "this Title, and of Title 'CIVIL RIGHTS,' and of Title 'CRIMES.'"  42 U.S.C. § 1988 (1976); id. (1982).  But again the statute itself explained that this "mean[t] titles XIII, XXIV, and LXX of the Revised Statutes, which comprise sections 530 to 1093, 1997 to 1991 and 5323 to 5550, respectively" of the Revised Statutes.  Id., References in Text.  This change would thus operate to exclude the Civil Rights Act of 1964 from the reach of Section 1988(a).  By 1988, the statute had taken its current form, expressly confining its application directly to "titles 13, 24 and 70 of the Revised Statutes."  42 U.S.C. § 1988 (1988).

[7]  This reading of Section 1988(a) is consistent with the express terms of Section 1988(b) & (c), which expressly confine the scope of their applicability to certain specified statutes (such as sections 1981 and 1983 of Title 28 and title VI of the Civil Rights Acts of 1964), none of which include the ADA, ADEA or Rehabilitation Act.  42 U.S.C. § 1988(b), (c).  Although Section 1988(b) applies to actions brought under statutes enacted in the modern era in addition to those brought under the Reconstruction Era Acts, Section 1988(b) is itself a product of the

In <u>Robertson v. Wegmann</u>, the Supreme Court applied Section 1988(a) to decide whether a claim under Section 1983 survived the death of the plaintiff. 436 U.S. 584, 585 (1978).[8] Although the Court sometimes spoke in general terms of "civil rights actions," the decision cannot be read to apply to any and all civil rights claims in the broadest sense, particularly insofar as the Court, in rejecting the lower court's reasoning that uniformity was desirable "in the application of the civil rights laws," noted that such civil rights actions consist of two different types: "whatever the value of nationwide uniformity <u>in areas of civil rights enforcement where Congress has not spoken</u>, in the areas to which § 1988 is applicable Congress has provided direction, indicating that state law will often provide the content of the federal remedial rule." 436 U.S. at 593 n.11.[9]

---

modern era, having been first enacted in 1976.

[8] Defendant also relies heavily on the Eighth Circuit's decision in <u>Parkerson v. Carrouth</u>, but that decision does not further the analysis here because it, like <u>Robertson</u>, concerned a claim under Section 1983, as well as claims under Sections 1985 and 1986, all of which are expressly governed by Section 1988(a). 782 F.2d 1449, 1450 (8th Cir. 1986). Thus it is not controlling on the issue of whether the survival of actions under federal statutes such as the ADA, ADEA, or the Rehabilitation Act should be governed by Section 1988(a) or federal common law. Although <u>Parkerson</u> spoke in terms of Section 1988(a) governing "questions of survival of federal civil rights actions," <u>id.</u> at 1451 n.3, this convenient shorthand phrasing–entirely apt for Section 1983, 1985 and 1986 claims–cannot be read as holding that Section 1988(a) applies beyond its stated terms to any and claims that generally concern civil rights in the broadest sense.

[9] Thus, in <u>Wilson v. Garcia</u>, the Supreme Court stated that in Section 1988 "Congress has implicitly endorsed [a state law borrowing] approach with respect to claims enforceable under <u>the Reconstruction Civil Rights Acts</u>." 471 U.S. 261, 267 (1985). Granted, this restrictive phrasing might be deemed dicta, but it is persuasive dicta insofar as the Court chose this phrasing rather than the more generic "civil rights statutes." Moreover, the Supreme Court has distinguished the Reconstruction Civil Rights Acts from Title VII of the Civil Rights Act of 1964 for purposes of the statute of limitations applicable to a Section 1981 claim. <u>Johnson v. Railway Express Agency, Inc.</u>, 421 U.S. 454, 457-61 (1975) ("We generally conclude . . . that the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent."). The Supreme Court reiterated that distinction in <u>Burnett v. Grattan</u>, when it stated that it has "implicitly rejected linkage [of the "century-old Civil Rights Acts"] with other federal statutes, emphasizing the

The Court made this limitation abundantly clear just two years later when, in <u>Carlson v.</u>

<u>Green</u>, it distinguished <u>Robertson</u> and held that the survival of a <u>Bivens</u> action–an action for

damages for violation of federal constitutional rights by federal officials and thus the counterpart

to a Section 1983 action for similar violations by state officials–is governed not by Section 1988

but rather by federal common law.  446 U.S. 14, 23-24 (1980).  The Court expressly noted that

Section 1988(a) does not apply to all civil rights actions.  "Section 1988 does not in terms apply

to *Bivens* actions, and there are cogent reasons not to apply it to such actions even by analogy."

<u>Id.</u> at n.11 (and stating that Section 1988(a) "requires that § 1983 actions be governed by" state

law unless inconsistent with federal law).  Granted, the Court distinguished the two contexts

partially in terms of the identity of the defendants–that is, state officials for Section 1983 actions

and federal officials for <u>Bivens</u> actions–but the point remains that the Court has recognized that

the applicability of Section 1988(a) is not unlimited and does not extend to any and all claims

that can be labeled civil rights actions.[10]

Thus, as a leading commentator notes,

> *Robertson* and *Carlson* establish two distinct approaches for resolving those
> questions that still remain open relating to the survival of civil rights actions.  <u>For</u>
> <u>those civil rights actions within the scope of section 1988</u>, *Robertson* requires
> application of state law unless it is inconsistent with federal law. . . .  <u>Civil rights</u>
> <u>actions not controlled by section 1988 are another matter entirely</u>.  *Carlson*
> teaches that state rules of survivorship may be adopted as a matter of
> convenience.  At the same time, however, there is no congressionally imposed

independence of the remedial scheme established by the Reconstruction-Era Acts."  468 U.S. 42,
47-49 (1984).

[10]  That particular basis for distinguishing between <u>Robertson</u> and <u>Carlson</u> is, of course,
not even in play here, as the defendant is not a public official of any kind, but rather a private
entity.  The <u>Carlson</u> Court also distinguished <u>Robertson</u> based on the fact that in <u>Carlson</u> the
plaintiff's death was due to the actions that formed the basis for the alleged deprivation of civil
rights.  446 U.S. at 24.  Nevertheless, the fact remains that the Supreme Court has recognized
that Section 1988(a) does not apply to every civil rights action.

obligation to do so.  The federal courts are free to fashion federal common law
rules to determine whether a civil rights claim survives, without regard to any
inconsistent state law.

2 Cook & Sobieski, <u>Civil Rights Actions</u> ¶ 4.05, at 4–83-85 (emphases added).

The fact that Section 1988(a) is confined to only certain civil rights actions–essentially its

historical companions such as Section 1983 and Section 1981 actions–cannot be discounted as a

mere legislative oversight in failing to update Section 1988 in the wake of the enactment of new

federal statutes such as the ADEA, ADA, and Rehabilitation Act.  What is now codified at

Section 1988(a) was originally enacted "as a portion of § 3 of the Civil Rights Act of April 9,

1866," an Act that also enacted what is now codified at 42 U.S.C. § 1982.  <u>Moor v. County of</u>

<u>Alameda</u>, 411 U.S. 693, 704 (1973).  Section 1988(a), which

has been made applicable to the Civil Rights Acts generally, was obviously
intended to do nothing more than to explain the source of law to be applied in
actions brought to enforce the substantive provisions of the Act, including
[Section 1982].  To hold otherwise would tear § 1988 loose from its roots in § 3
of the 1866 Civil Rights Act.  This we will not do.

<u>Id.</u> at 705-06.  Here, too, applying Section 1988(a) beyond its stated terms to employment

discrimination acts of the late 20th century would rip the statute loose from its historical context.

The Court went on to follow the evolution of Section 1988 in the wake of the 1870

enactment of what is now Section 1981, noting that section 18 of the Act of May 31, 1870

(section 16 of which enacted Section 1981), "provided that the provision now contained in §

1981 was to be enforced in accordance with the provisions of the Act" that enacted Section

1988(a).  <u>Id.</u> at 705 n.19.  "Thus, Congress again directed merely that § 1988 would guide courts

in the enforcement <u>of a particular cause of action, namely, that created in § 1981</u>.  Similarly,

when 42 U.S.C. § 1983 was first enacted [in 1871], it was made 'subject to the same rights of

appeal, review upon error, and other remedies provided in like cases . . . under the provisions of

the Act" that enacted Section 1988(a).  Id.

"Codification saw § 1988 made into § 722 of the Revised Statutes, with the statute being made generally applicable to, inter alia, the Civil Rights portion of the Revised Statutes, see §§ 1977-1991."  Id.[11]  In short, the applicability of Section 1988(a) always has been confined to certain particular civil rights statutes expressly identified in the statute itself–essentially those substantive civil rights provisions enacted roughly concurrently with what is now codified as Section 1988(a).

After Reconstruction, the next major wave of "civil rights" legislation began in the 1960s. The ADEA, codified as Chapter 14 of Title 29, was enacted in 1967.  Pub. L. 90-202, Dec. 15, 1967, 81 Stat. 602.  The Rehabilitation Act, codified as Chapter 16 of Title 29, was originally enacted in 1973.  Pub. L. 93-112, Sept. 26, 1973, 87 Stat. 357.  The ADA, codified as Chapter 126 of Title 42, was enacted in 1990.  Pub. L. 101-336, July 26, 1990, 104 Stat. 327.

But any argument that Section 1988(a) should be construed to apply beyond its stated terms to these employment discrimination acts is doomed by the fact that Congress did modify Section 1988 in 1976 by adding the attorneys fees provision that is now codified at Section 1988(b), and again in 1991 by adding the expert fees provision that is now codified at Section 1988(c).[12]  By their express terms, each of those provisions applies only to certain specified actions.  42 U.S.C. § 1988(b), (c).  Perhaps more importantly, Congress expanded the reach of those two provisions several times since the enactment of all three of the federal acts at issue. For example, Congress expanded the applicability of subsection (b) in 1993, 1994 and

_____

[11]  As noted above, Sections 1977-91 of the Revised Statutes are now codified at 42 U.S.C. §§ 1981-1994.

[12]  The 1991 enactment also subdivided Section 1988 into its three present subsections. Pub. L. 102-166, Nov. 21, 1991, 105 Stat. 1074, 1079.

2000–making it applicable to the Religious Freedom Restoration Act of 1993, section 13981 of

Title 42 (a "civil rights" provision of Chapter 136 ("Violent Crime Control and Law

Enforcement")), and the Religious Land Use and Institutionalized Persons Act of 2000,

respectively–but in none of those enactments, nor in any other modification of Section 1988, did

Congress expand the scope of Section 1988(a) beyond its currently-stated limited applicability.

 The Court is aware that many federal decisions, which Defendant contends constitute a

majority, apparently apply Section 1988(a) more broadly.  E.g. Hutchinson ex rel. Baker v.

Spink, 126 F.3d 895 (7th Cir. 1997) (stating that "state law governs the survival of statutory civil

rights actions like the ADA claim" as well as a Section 1983 claim); Allred v. Solaray, Inc., 971

F. Supp. 1394, 1396 (D. Utah 1997) (lumping ADA claims together with those under Title VII as

falling under Section 1988(a)); Rosenblum v. Colorado Dept. of Health, 878 F. Supp. 1404,

1408-09 (D. Colo. 1994) (same); United States v. Morvant, 843 F. Supp. 1092, 1095 (E.D. La.

1994) (misapplying precedent to extend Section 1988(a) to an ADA claim); Glanz v. Vernick,

750 F. Supp. 39, 42-43 (D. Mass. 1990) (applying Section 1988(a) to Rehabilitation Act claim

because Rehabilitation Act incorporates remedies, procedures, and rights of Title VI of the Civil

Rights Act of 1964, which, "like all other federal civil rights statutes, is governed by 42 U.S.C. §

1988"); Harrison v. Harlem Hosp., 2007 WL 2822231 (S.D.N.Y. Sept. 28, 2007) (simply

lumping ADA claim together with claims under Sections 1981, 1983, 1985 & 1986 for purposes

of survival); Squires v. Nephrology Foundation of Brooklyn, Inc., 1999 WL 1495421 (E.D.N.Y.

Dec. 27, 1999) (simply stating that the "court looks to New York law in deciding whether

[plaintiff's] federal civil rights claims survive her death" even though claims included ADA and

Rehabilitation Act claims in addition to Section 1983 claim).

 But with rare exception, none of these decisions supports its conclusion with any

persuasive analysis–or in fact any analysis at all–of the statutory language.[13]  Rather, courts seem

to have ignored the actual language of Section 1988(a), presumably under the unsupported

assumption that it applies broadly to any and all actions that could be characterized as sounding

in "civil rights."  E.g. Glanz v. Vernick, 750 F. Supp. 39, 42-43 (D. Mass. 1990) (claiming that

Title VI of the Civil Rights Act of 1964, "like all other federal civil rights statutes, is governed

by 42 U.S.C. § 1988").

      One example is sufficient to illustrate how these mis-readings occur.  In United States v.

Morvant, the court applied Section 1988(a) to an ADA claim, stating that

> [w]hen a federal civil rights statute is silent as to whether the government may
> seek damages on behalf of an aggrieved person who has died prior to the
> commencement of the civil action, 42 U.S.C. § 1988 directs the court to apply the
> law of the forum state.  Section 1988 uses sweeping language, and was designed
> to remedy the deficiencies and effectuate the underlying purposes of federal civil
> rights statutes.

843 F. Supp. 1092, 1095 (E.D. La. 1994) (emphasis added).  In support of its conclusion the

court did not address the statutory language, but rather simply cited Brazier v. Cherry, 293 F.2d

401, 408 (5th Cir. 1961).  And in Brazier, the Fifth Circuit did in fact state that "§ 1988 uses

sweeping language."  293 F.2d at 408.  But the Fifth Circuit was addressing the breadth of state

law that the federal statute adopted, noting it included substantive, procedural and jurisdictional

law.  Id. at 405-09 (providing thorough analysis of the breadth and extent of state law adopted as

---

[13]  In Green v. City of Welch, the court did conduct a statutory analysis–concluding that
"[t]he ADA . . . is not among the statutes specifically enumerated in § 1988(a)"–but nevertheless
ruled that because the ADA must be construed consistent with the Rehabilitation Act, it would
apply state law "pursuant to § 1988(a) to determine the survivability of plaintiff's ADA claim."
467 F. Supp. 2d 656, 664-67 (S.D.W.V. 2006).  But the court's analysis, which jettisons the
statutory text in favor of a purported need for consistency between the "requirements" under the
two statutes, relies on decisions regarding the statute of limitations, id. at 666, for which, of
course, there is no federal common law as there is for survival.  (The enactment of the residual
federal statute of limitations in 1990 applies only to actions under federal statutes enacted after
December 1, 1990.  2 Cook & Sobieski, supra, ¶ 4.01[A].)

federal law under Section 1988).  The Fifth Circuit was not addressing the breadth of federal

actions to which Section 1988 applies and, in fact, had no occasion to do so as the plaintiff had

alleged claims only under Sections 1981, 1983, 1985(3) and 1986, actions which plainly fall

within the express statutory reach of Section 1988(a).

### 2. Federal Common Law Generally Governs The Survival of Federal Causes of Action

Absent any "expression of contrary intent" by Congress such as Section 1988(a), whether

a federal cause of action survives "is governed by federal common law."  Smith v. Department of

Human Services, 876 F. 2d 832, 834 (10th Cir. 1989).  Accord Caraballo v. South Stevedoring,

Inc., 932 F. Supp. 1462, 1466 (S.D. Fla. 1966).[14]  Because Section 1988(a), by its express terms,

does not govern any of the actions at issue here, the survival of the present federal claims is

governed by the federal common law.

Under that common law, only actions for penalties or forfeitures do not survive.  Smith,

876 F.2d at 834-35; Murphy v. Household Finance Corp., 560 F.2d 206, 208 (6th Cir. 1977); see

Ex parte Schreiber, 110 U.S. 76, 80 (1884) ("At common law, actions on penal statutes do not

survive.").  "Three factors in particular" are relevant in "assessing the extent to which the

statutory provisions [at issue] are penal in nature":  "1) whether the purpose of the statute was to

redress individual wrongs or more general wrongs to the public; 2) whether recovery under the

statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by

the statute is wholly disproportionate to the harm suffered."  Murphy, 560 F.2d at 209.  With this

understanding, the Court will address the particular federal statutes at issue.

---

[14]  In Slade v. United States Postal Service, the court first correctly relied on Smith to rule
that federal common law applies absent any "expression of contrary intent," but then applied
Section 1988(a) too broadly to govern a Title VII case.  952 F.2d 357, 360 (10th Cir. 1991).

### 3.      Only Claims For Liquidated Damages Under ADEA Abate

Although Defendant initially sought to dismiss the ADEA claim except to the extent it

sought special damages (Mem. at 5), the parties now agree that Plaintiff's claim under the ADEA

survived decedent's death except for any claim for liquidated damages (Reply Mem. at 2).

In any event, this Court agrees with that in <u>Kulling v. Grinders For Industry, Inc.</u>, which

noted "an important distinction between the ADEA and the seminal federal civil rights statute,

42 U.S.C. § 1983," under which "the courts are expressly authorized to look to state law for

certain purposes."  115 F. Supp.2d 828, 844 (E.D. Mich. 2000).  "[T]he ADEA lacks any

provision analogous to § 1988."  <u>Id.</u> at 845 (noting that this distinction "presumably accounts for

the uniform consensus among the courts that federal common law governs the survival of ADEA

claims").  Thus, federal common law would govern survival of an ADEA claim.

A claim for liquidated damages under the ADEA does not survive the death of the

plaintiff.  <u>Smith v. Department of Human Services</u>, 876 F. 2d 832, 837 (10th Cir. 1989).  But

"claims for reinstatement, backpay, and other benefits under the ADEA are clearly remedial in

nature" and the ADEA itself is not a penal statute.  <u>Id.</u>  <u>Accord</u> <u>Hawes v. Johnson & Johnson</u>,

940 F. Supp. 697, 702-04 (D.N.J. 1996); <u>Khan v. Grotnes Metalforming Systems, Inc.</u>, 679 F.

Supp. 751, 756 (N.D. Ill. 1988) (under "[f]ederal common law," which "has long recognized that

actions which are penal in nature do not survive the death of a party," ADEA claims survive as

they are "remedial in nature").

### 4.      Only Claims For "Penal" Damages Under The ADA and Rehabilitation Act Abate Here

With respect to the survivability of a claim under the ADA, "the courts have confusingly

split." <u>Hanson v. Atlantic Research Corporation</u>, 2003 WL 430484, *3 (E.D. Ark. Feb. 14,

2003).  Many courts appear to have applied Section 1988(a) to such claims.  <u>Id.</u>  But here, as in

17

Hanson, "[t]his Court believes these lines of cases to be erroneous."  Id. (noting that many cases applying 1988(a) to ADA claims mistakenly rely on Robertson "despite the fact that the Robertson opinion concerned a claim arising under 42 U.S.C. § 1983–a claim specifically covered by Section 1988 according to the language of Section 1988").

Likewise, with respect to actions under the Rehabilitation Act, such claims (as well as those under Title VII of the Civil Rights Act of 1964) "are not affected by 42 U.S.C. § 1988(a)." Fleming v. United States Postal Service AMF O'Hare, 27 F.3d 259, 262 (7th Cir. 1994) (Posner, J.) (noting that Section 1988(a) "provides that when the remedies provided by federal law for violations of section 1983 and other Reconstruction Era civil rights statutes are inadequate the court may borrow state remedies").[15]

Thus, because Section 1988(a) does not govern the ADA or the Rehabilitation Act, the survival of such claims is determined by the federal common law, under which only "actions which are penal in nature do not survive the death of party," and the ADA "has been held to be remedial in nature."  Estwick v. U.S. Air Shuttle, 950 F. Supp. 493, 498 (E.D.N.Y. 1996). Accordingly, Plaintiff is entitled to all available remedies under the ADA and Rehabilitation Act except for liquidated or punitive damages.  Caraballo v. South Stevedoring, Inc., 932 F. Supp. 1462, 1466 (S.D. Fla. 1966); Hanson, 2003 WL 430484 at *4.

_____

[15]  As several courts have noted in addressing the issue of survival of claims under the ADA and the Rehabilitation Act, the ADA shares many features with the Rehabilitation Act and the Civil Rights Act of 1964, as the ADA, codified as Chapter 126 of Title 42, expressly incorporates certain specified aspects of those earlier-enacted statutes.  With respect to actions under Subchapter I of Chapter 126, Section 12117 provides that "[t]he powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be" applicable in any action alleging disability discrimination in employment.  42 U.S.C. § 12117(a).  Similarly, Subchapter II of the ADA also provides that "[t]he remedies, procedures, and rights set forth in section 794a of Title 29 [the Rehabilitation Act of 1973] shall" govern in ADA actions alleging disability discrimination with respect to public services.  42 U.S.C. § 12133.

**III.     CONCLUSION**

Under the MHRA, Plaintiff may recover only special damages on behalf of the decedent, but is entitled to establish through discovery, the precise contours of such special damages that it will claim at trial.  None of the three federal statutes at issue is governed by Section 1988(a).  Thus, under the federal common law, Plaintiff may recover all damages otherwise available under those statutes except those deemed penal, such as liquidated and punitive damages.

**IV.     RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.     Defendant's motion to dismiss (Doc. No. 5) be GRANTED IN PART (insofar as Plaintiff seeks general damages under the MHRA and penal damages under the federal statutes) and DENIED IN PART (insofar as Defendant seeks to strike claims for special damages under the MHRA and any non-penal damages under the federal statutes).

Dated:  July 8, 2008

　　　　　　　　　　　　　　　　　__  s/ Susan Richard Nelson__

　　　　　　　　　　　　　　　　　SUSAN RICHARD NELSON
　　　　　　　　　　　　　　　　　United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by July 23, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.